COOK *v.* AUDITOR GENERAL.

1. LEGISLATIVE EMPLOYÉS—COMPENSATION—PRACTICE.

Any long-continued practice on the part of the legislature in relation to compensating its employés cannot be permitted to overturn a clearly expressed statute governing the subject.

2. SAME—MILEAGE.

Under 1 Comp. Laws, § 12, providing that the compensation of clerks employed by the legislature shall be $3 per day and 10 cents for every mile actually traveled in going to and returning from the place of meeting, a clerk who was employed at the seat of government when he was appointed, and who has not since returned to the place of his legal residence, is not entitled to mileage.

3. SAME—AMOUNTS DUE—HOW DETERMINED—AUTHORITY OF AUDITOR GENERAL.

Under 1 Comp. Laws, § 12, fixing the rate of compensation of the members and employés of the legislature; and section 13, providing that the sums due them shall be certified by the secretary or clerk and presiding officer of the respective houses, and countersigned by the auditor general,—the duty of determining the amounts due devolves upon the certifying and countersigning officers; hence the auditor cannot be compelled to countersign a certificate containing items to which the person in whose favor it is made is not entitled.

*Mandamus* by Samuel F. Cook to compel Perry F. Powers, auditor general, to countersign a certificate for mileage. Submitted November 12, 1901. Writ denied December 3, 1901.

*Lewis M. Miller*, for relator.

*Horace M. Oren*, Attorney General (*Charles W. McGill*, of counsel), for respondent.

MONTGOMERY, C. J.    The relator asks for a *mandamus* to compel the auditor general to countersign a certificate issued to relator by the speaker and clerk for mileage

claimed to be due him as journal clerk of the house of representatives during the regular session of 1901. The facts are undisputed. It appears that the relator has his legal residence at Rock River, Alger county, Mich.; that he · was journal clerk of the house during the special session in December, 1900; that from the close of that session until the opening of the regular session he was employed in assisting the clerk of the house; that he has not been at Rock River since July 15, 1900, except for the purpose of casting his vote at the general election held in November, 1900. It appears, therefore, that he did not actually travel from Rock River to Lansing for the purpose of attending upon the session of the legislature. The respondent refused to countersign upon the ground that the relator is not entitled to mileage by the terms of the statute (1 Comp. Laws, § 12), which provides, among other things :

"The compensation of the secretary, engrossing and enrolling clerk, and sergeant at arms of the senate, and their authorized assistants, and of the clerk and engrossing and enrolling clerk and sergeant at arms of the house of representatives, and their authorized assistants, and of the clerks employed with the consent of the senate or house of representatives by any standing or special committees of either of said houses, shall be three dollars a day each for actual attendance during the session, and ten cents for every mile actually traveled in going to and returning from the place of meeting on the usually traveled route."

1 Comp. Laws, § 13, provides :

" Such sums as may be due under the provisions of this act to the secretary of the senate and the clerk of the house of representatives shall be certified by the presiding officers of the respective houses, and countersigned by the auditor general; and such sums as may be due the president of the senate and speaker of the house of representatives shall be certified by the secretary or clerk of the respective houses, and countersigned by the auditor general; and such sums as may be due to the members and other officers of either house shall be certified by the

secretary or clerk and the presiding officers of the respective houses, and countersigned by the auditor general; and the state treasurer, upon the presentation of any such certificate, countersigned as provided in this section, is hereby authorized and directed to pay the same."

The question presented is whether, upon such a certificate being presented to the auditor general, his duty is purely ministerial, or whether he has the right, if he has a doubt about the service having been rendered, to investigate and proceed according to the fact; to refuse his signature or to grant it, as the law directs. It is the contention of the relator that he has no discretionary power in the matter; that the house of representatives itself determines the amount of the mileage due to each member. And this is based upon long-continued practice, upon the claim of necessity, and upon the claim that each house exercises certain judicial powers, such as are necessary to determine questions arising in matters peculiar to itself.

So far as the practice is concerned, it does appear that in many instances the house has, by resolution, fixed the mileage of its members and employés at the close of the session. This does not appear to have been done prior to 1867 by the house, nor by the senate prior to 1873. It appears that the early resolutions of both houses, referring the matter to committees, do so " for the proper guidance of officers." But, whatever may be said of the force of practice in the absence of any statutory provision, it is clear that the legislature, acting through both branches, and by law approved by the governor, has the undoubted power to limit the exercise of such practice, and to prescribe what the compensation to employés shall be, and the manner in which it shall be determined. It is the contention of the relator that by 1 Comp. Laws, § 13, the legislature has *failed* to prescribe the manner in which the mileage shall be determined, and that, out of the very necessity of the case, the duty is imposed upon the legislature to so determine the mileage, and that it would follow that such determination is final. Is this a proper construc-

tion of the statute? The statute prescribes what officers shall certify and what officer shall countersign the certificate which shall entitle the member of the house or the employé to draw his money from the state treasury. But it is said that the statute contains no provision as to how the amount shall be determined. We think the plain implication is that it shall be determined by the officers whose duty it is to make the certificate and to countersign the same. They must determine the fact.

This question can be tested in this manner: Suppose the house failed to take any action upon the subject, and the clerk who had served during the term should apply for a certificate for his *per diem* and mileage, and the officers should refuse to take any action in the matter. Can it be doubted that some action could be enforced by *mandamus?* The duty of certifying this *per diem* and mileage presupposes the ability to determine, and imposes the duty upon the officers whose duty it is to so certify and countersign the certificate of determining, the amount due; and it is significant that the statute provides that the amount so certified shall be such sums as may be due "under the provisions of this act," which is the statute fixing the compensation.

This is not an isolated instance of legislation of this character. 3 Comp. Laws, § 11229, provides that the compensation of grand and petit jurors shall be paid out of the treasury of the county on the certificate or order of the clerk or judge of such court. Whether the clerk or judge act in the matter, the duty would be implied to ascertain the fact before he makes the certificate. So, in the present case, the duty of certifying implies a duty of certifying the truth. This necessitates an ascertainment of the truth, and, by the language of the statute, it imposes upon the officers whose duty it is to certify and countersign the duty of ascertaining how much is due by the terms of the act. In holding thus we in no way infringe upon the prerogative of a co-ordinate branch of government. We but affirm the law which the legislature

has itself enacted. The case of *Morgan* v. *Buffington*, 21 Mo. 549, cited by counsel for respondent, is very much in point.

It is suggested that, if the view above indicated is adopted, money has been drawn illegally from the state treasury in a great many instances, for the reason that the legislature has assumed to pass a resolution fixing the mileage of its members at the close of the session. But we assume that in the cases referred to there has been also the certificate of the proper officers, countersigned by the auditor general; and, if this be so, it can hardly be said that the funds were illegally withdrawn from the state treasury. However this may be, and giving due regard to the force of long-continued practice, we are not able to discover in the statute in question any ambiguity.

The writ of *mandamus* will be denied.

The other Justices concurred.