SMITH *v.* AUDITOR GENERAL.

1. CONSTITUTIONAL LAW—STATUTORY CONSTRUCTION — EVIDENCE.
    In construing statutory provisions the practical construction which the legislature has during a long period of time adopted with reference to their meaning, is entitled to weight.

2. PUBLIC OFFICERS—STATUTES—STATES—SALARIES.
    Employés of the legislature are entitled to compensation at the rates fixed by Act No. 85, Pub. Acts 1907, during the entire time of the session, including Sundays and ordinary adjournments. Const. 1850, Art. 4, § 15. McALVAY, J., dissenting.

Mandamus by Clarence B. Smith to compel Oramel B. Fuller, auditor general, to countersign a certificate and issue a warrant for relator's salary as assistant secretary of the senate. Submitted March 6, 1911. (Calendar No. 24,493.) Writ granted March 27, 1911.

*Tuttle, McArthur & Dunnebacke* (*De Vere Hall* and *Dwight G. F. Warner*, of counsel), for relator.

*Franz C. Kuhn*, Attorney General, and *Thomas A. Lawler*, Assistant Attorney General, for respondent.

BLAIR, J. On or about January 10, 1911, relator was duly appointed to the office of assistant secretary of the senate. On February 2d there was issued to him, under the provisions of section 13, 1 Comp. Laws, being section 3 of Act No. 3, Session Laws of 1873, as amended by Act No. 85, Pub. Acts 1907, a certificate, signed by the president and secretary of the senate, that there was due to relator for services as such assistant secretary the sum of $60 for the salary period, January 24, 1911, to February 2, 1911, inclusive. The senate was in actual session on each day during said period, except Saturday, January 28th, and Sunday, January 29th. The relator presented such certificate to the auditor general for his signature, as provided in section 13. The auditor general refused to countersign it, basing his refusal upon a written opinion of the attorney general that officers and employés of the house and senate are not entitled to a *per diem* compensation for services rendered on Sunday.

Relator's petition prays for a writ of mandamus directing the auditor general to countersign such certificate, and also to issue his warrant on the State treasurer therefor. If it shall appear, as contended by relator, that respondent's position cannot be sustained in law, then the writ should issue, commanding him to perform one or both of said duties.

The Constitution of 1835, Art. 4, § 18, provided that:

"The members of the legislature shall receive for their

services a compensation to be ascertained by law * * * and such compensation shall never exceed $3 a day."

The Constitution of 1850 provided, article 4, § 15:

"The compensation of the members of the legislature shall be $3 per day for actual attendance and when absent on account of sickness for the first sixty days of the session of the year 1851 and for the first forty days of every subsequent session, and nothing thereafter. When convened in extra session their compensation shall be $3 a day for the first twenty days and nothing thereafter."

Speaking of these Constitutions, this court said at an early day:

"Under the former Constitution the amount of compensation allowed to members and officers of the senate and house of representatives was settled upon and fixed annually by the legislature itself, but the amount is no longer the subject of legislation. It is now clearly and definitely settled and fixed by the revised Constitution. Section 15 of article 4 of that instrument provides as follows," etc.

This section was amended in 1859–60 so as to read:

"The compensation of the members of the legislature shall be three dollars per day for actual attendance, and, when absent on account of sickness, but the legislature may allow extra compensation to the members from the territory of the upper peninsula, not exceeding two dollars per day during a session. When convened in extra session their compensation shall be three dollars a day for the first twenty days, and nothing thereafter. * * *"

With these provisions of the Constitution in force, the legislature adopted Act No. 3 of the Session Laws of 1873, entitled, "An act to provide for the payment of the officers and members of the legislature."

Section 2 provides that:

"The compensation of the president and members of the senate and of the speaker and members of the house of representatives shall be three dollars per day each, for actual attendance, and when absent on account of sickness during the session of the legislature. * * * The compensation of the secretary, engrossing and en-

rolling clerk and sergeant at arms of the senate, and their authorized assistants, * * * shall be three dollars a day each, for actual attendance during the session," etc.

This section was amended in 1907 (Act No. 85, Pub. Acts 1907) so as to read:

" From and after the first day of January, 1901, the compensation of the president and members of the senate, and the speaker and members of the house of representatives, shall be three dollars per day each, for actual attendance, and when absent on account of sickness during the session of the legislature. * * * The *per diem* compensation of the secretary of the senate shall be ten dollars; of the first assistant secretary, six dollars, * * * which compensation shall be in full for all services performed during any regular or special session," etc.

These provisions of the statute render it clear that it was the intention of the legislature to place the compensation of the officers referred to upon precisely the same legal standing as their own, namely, a fixed compensation per day for actual attendance during the session. If, therefore, a reasonable construction of the constitutional provisions determining their compensation authorized the members of the legislature to receive their *per diem* compensation upon a computation including Sundays, it logically follows that the same mode of computation is to be used in determining the relator's compensation.

It will be observed that by the original Constitution of 1850, compensation was limited to the first 60 days of the session, etc., and as amended in 1860, although the provisions limiting payment at the first session to 60 days and thereafter to 40 days were omitted, the provision was retained that when convened in extra session their compensation should be $3 per day for the first 20 days.

The Constitution of 1850, Art. 4, § 28, contained a further provision that:

" No new bill shall be introduced into either house of the legislature after the first 50 days of a session shall have expired."

So far as we have been able to ascertain, this provision has always been construed by the legislature as limiting the introduction of new bills to the first 50 successive days of the session, including Sundays. While the correctness of this practical construction of the legislature has not been expressly passed upon by the court, it was recognized in the case of *Davock* v. *Moore*, 105 Mich. 120 (*vide* page 133, 63 N. W. 424, 28 L. R. A. 783). In that case the bill was introduced on the fiftieth consecutive day, including Sundays, and the court said:

" It appears that the bill was introduced on the fiftieth day, and therefore within the time limited by this clause of the Constitution."

This is the natural meaning of the language used, and is in accordance with the contemporaneous and subsequent constructions of the legislatures of the State, both of which considerations are entitled to weight in determining the proper construction of the constitutional provisions. *Attorney General* v. *State Board of Assessors*, 143 Mich. 73 (106 N. W. 698); *Menton* v. *Cook*, 147 Mich. 540 (111 N. W. 94). This construction is further strengthened by the provision of article 4, § 14, of the Constitution, that:

" If any bill be not returned by the governor within 10 days, Sundays excepted, after it has been presented to him," etc.

If the words, " first fifty days of a session " used in section 28 of article 4 include Sundays, no good reason is perceived why the same interpretation should not be applied to similar words used in the sections as to compensation.

Under our Constitution and laws the session of the legislature is to be considered as an entirety, its beginning fixed by the Constitution itself. As said by Mr. Cushing:

" The sitting of a legislative assembly, from day to day, begun on the day fixed by law, whether a quorum assembles, or the assembly is organized on that day, or not, and brought to a close by lapse of time, or by mutual agree-

·ment, constitutes a session for all legal or parliamentary purposes." Law and Practice of Legislative Assemblies, par. 507.

The usual temporary adjournments of the legislature, which are, in fact, necessary to enable the members to perform their duties as members of special and standing committees, in making investigations for the purpose of acquiring necessary information and drawing reports, bills, and amendments for the action of the house when in session, and in performing the manifold duties incident to their position and necessary to the proper discharge of their duties, have, in our opinion, no effect upon the continuity of the session.

It is to be observed that neither the right of the members of the legislature nor of the officers and employés is grounded upon the right to receive compensation for services actually rendered upon Sundays, but upon the view that the method of computing the time in determining their compensation as fixed by the Constitution and laws concerning the same recognizes all days of the session, whether work is done thereon or not, in which the legislature may legally be said to be in session as proper days to be included in the computation. We have no doubt, however, that an adjournment of the legislature and the dispersal of its members to attend to their own affairs to the exclusion of those of the State may cover such a period of time as to exclude the view that the legislature is in session, for the purpose of basing compensation upon services rendered.

The fact, also, that the members of the legislature have always claimed the right to, and have received, compensation for Sundays during the sessions, while insufficient to overturn the plain meaning of a statute, is of considerable moment in ascertaining the intention of the legislature in passing statutes providing for their compensation. There is much, also, in the variance of the language as to the three classes of officers and employés used in the

165 MICH.—10.

amendment of 1907 to strengthen our conclusion that it was the intention of the legislature that, as to relator's class, at least, Sundays should be counted in computing his *per diem* compensation. The provision of the original act of 1873 requiring actual attendance during the session is omitted as to the first class of officers provided for in the section, although it is retained as to the second class, and in perhaps stronger language as to the third class.

It is conceded by the attorney general that the relator is entitled to compensation during ordinary adjournments, except as to Sundays, as we understand, even though not necessarily employed in performing services upon those days, from which it appears to us to follow that the *per diem* provided is not the usual *per diem* compensation for services actually rendered and to be paid for only as actually rendered; but, as we have heretofore said, a method for computing the amount due. So far as we have been able in the brief time at our disposal to examine authorities, they appear to support our conclusion that Sundays are to be included in the computation of the salaries, and that the Sunday law, § 5912, 2 Compiled Laws, has no application to the question. Cushing's Law & Practice of Legislative Assemblies, §§ 356, 357; *Ex parte Pickett*, 24 Ala. 91; *State* v. *Hastings*, 16 Wis. 358; *Moren* v. *Blue*, 47 Ala. 709; *Moog* v. *Randolph*, 77 Ala. 597, *vide* page 607; *State* v. *State Auditor*, 37 Mo. 176.

It is argued by the attorney general that *Moog* v. *Randolph*, *supra*, and *Ex parte Cowert*, 92 Ala. 94 (9 South. 225), holding that a constitutional provision, which limited each session of the general assembly to 50 days, means working days and Sundays are excluded from the computation, overrule the previous cases in that State above cited. In *Moog* v. *Randolph*, the court said:

"The right to adjourn *ad libitum*, upon certain week days, and the right to draw pay for such days, are questions not necessarily dependent, the one on the other. The power to adjourn may exist, without the right to draw pay; and they are not convertible or correlative

powers, as has been argued before us at the bar. This suggestion is not intended to cast any doubt upon previous decisions of this court, holding that the members of the general assembly are entitled to draw their *per diem* pay on Sundays—a view in which we all fully concur."

We are therefore of the opinion that the relator is entitled to the writ as prayed, and it is so ordered.

OSTRANDER, C. J., and BIRD, HOOKER, BROOKE, and STONE, JJ., concurred.

McALVAY, J. (*dissenting*). I am unable to agree with the conclusions of Mr. Justice BLAIR in this matter, as set forth in his opinion. The only question involved is the construction of a portion of the statute which provides for the compensation of the officers and members of the State senate, viz., section 2 of Act No. 85, Pub. Acts 1907. The facts of the case as stated in that opinion do not require repetition.

For purposes of convenience the portion of the act under consideration may, however, be properly quoted:

"From and after the first day of January, 1901, the compensation of the president and members of the senate, and the speaker and members of the house of representatives, shall be three dollars per day each, for actual attendance, and when absent on account of sickness during the session of the legislature.  *  *  *  The *per diem* compensation of the secretary of the senate shall be ten dollars; of the first assistant secretary, six dollars,  *  *  *  which compensation shall be in full for all services performed during any reguler or special session for which they are elected by the senate or appointed by a superior officer," etc.

For the purposes of an intelligent construction of this statute we must know what it says, not what after one reading we may think it says. Such knowledge can be acquired only by repeated and critical readings of the entire quotation.

After such careful study, and applying the fundamental rule of all construction, that usual and ordinary

words must be given their usual and ordinary meaning, I discover no ambiguous or hidden meaning in the simple language used. This statute provides that the *per diem* compensation of relator (who is first assistant secretary of the senate) shall be $6, and there is no statement, express or implied, that the days of employment are to be other than the usual, ordinary, and lawful days of any ordinary employment.

The contrary is not claimed by relator and those who agree with him. The claim is that, in order to arrive at the true intent of the legislature as to the days of the employment, other constitutional and statutory provisions must be considered, together with the construction of long-continued practice given to the same by the legislature. It is sufficient answer to such claim to say that such rule of construction is never allowable or resorted to where no ambiguity or doubtful meaning appears on the face of the statute under consideration.

Further, whatever view the legislature may have taken of the provisions of the State Constitution that view cannot control in construing this legislation, unless it appears that it acted within its authority and such action is conclusive. Nor will its construction of its own legislation be binding, if in contravention of the Constitution or the general laws.

After quoting constitutional and statutory provisions the constructions of which are relied upon, we will proceed to the consideration of the argument tending to support relator's claim, which, stated briefly, is that, under this statute, he is entitled to compensation at $6 per day for every day, both week days and Sundays, from the time of his appointment until the close of the legislative session.

The portion of the section (section 2 of the act of 1907) as far as quoted, and as far as material to this case, does not in any respect change section 2 of Act No. 175, Pub. Acts of 1901, which it amends, and which was an amendment to section 2 of Act No. 3, Pub. Acts 1873 (1 Comp. Laws, § 12), entitled, "An act to provide for the payment

of the officers and members of the legislature," which provided:

"The compensation of the president and members of the senate, and of the speaker and members of the house of representatives, shall be three dollars per day each, for actual attendance, and when absent on account of sickness during the session of the legislature.   *   *   *   The compensation of the secretary, engrossing and enrolling clerk, and the sergeant at arms of the senate, and their authorized assistants,   *   *   *   shall be three dollars a day each, for actual attendance during the session," etc.

This act of 1873 was enacted under section 15, Art. 4, of the Constitution of 1850, as amended in 1860, which provided:

"The compensation of the members of the legislature shall be three dollars per day for actual attendance, and when absent on account of sickness,   *   *   *"   etc.

It is urged that because under this constitutional provision and the statute, both of which provide for payment for actual attendance and when absent on account of sickness, the different branches of the legislature voted themselves a *per diem* of $3 for every day from beginning to end of the session that must stand as a legislative construction, and control in the instant case.    This is not a reasonable construction of this constitutional provision or the statute, and such provisions never authorized compensation to the members of the legislature for Sundays, and no claim is made that they would, except for the so-called construction of the legislature.    It was in direct violation of both the Constitution and the statute.    Surely this court will not consider such an act a construction of the Constitution or of the statute.

Another provision of the Constitution of 1850 was:

" That no new bill shall be introduced into either house of the legislature after the first fifty days of a session shall have expired " (a provision which is not contained in the present Constitution).

In a case, *Davock* v. *Moore*, 105 Mich. 120, at page

133 (63 N. W. 424, 28 L. R. A. 783), where a bill was introduced on the fiftieth consecutive day of the legislative session, including Sundays, this court said:

"It appears that the bill was introduced on the fiftieth day, and therefore within the time limited by this clause of the Constitution."

The question as to whether Sundays were to be counted or not was not before the court. It was in fact on the fiftieth day and within the constitutional provision in any event, whether Sundays were included or not. This is claimed to be a recognition by this court that Sundays are to be counted as legislative days. This case does not support the contention. Other courts have passed upon the question, holding against relator. *Ex parte Cowert*, 92 Ala. 94 (9 South. 225); *Moog* v. *Randolph*, 77 Ala. 597.

In *Ex parte Cowert, supra*, a statute was claimed to be void because enacted after the lapse of 50 days to which sessions of the general assembly are limited. The court said:

"It has more than once been determined by this court, and we have no disposition to depart from our rulings on that subject, that 'days,' within the limitation upon the sessions of the general assembly imposed by section 5, Art. 4, of the Constitution, means working days, and, of consequence, that Sundays are to be excluded from the computation by which the end of the session is to be determined," citing *Moog* v. *Randolph*, 77 Ala. 597; *Sayre* v. *Pollard*, 77 Ala. 608.

These are the latest and therefore the controlling pronouncements of that court, and in no cases in that State has the question of including Sundays in computing compensation been before the court. There are *dicta* upon the subject in two cases relied upon by relator, which are referred to and quoted in the opinion of Mr. Justice Blair.

The provision in the Constitution of 1850 relative to compensation of members of the legislature provided pay only for each day "for actual attendance, and when ab-

sent on account of sickness." The statute of 1873 in terms followed this provision of the Constitution providing for a *per diem* compensation for employés of the senate "while in actual attendance." The striking out of these words in 1901 and 1907, where they appeared the second time in the act of 1873, was simply removing a redundancy and has no effect upon this construction. We must construe this section as a whole.

While a session of the legislature is, in a certain sense, continuous from its opening until its final adjournment, it cannot be said that Sundays can be called legislative days. It will not be contended that exigencies threatening the public safety, the public health, etc., might not arise where legislative action on Sunday would be perfectly proper, but the journals of both branches of the legislature show that during all of its sessions since the State was organized no such sessions have been held upon Sunday, and that adjournments over that day have always been taken. The legislature by such action has by an unbroken record recognized that Sunday is not a working day, and also recognized the provision of the general law prohibiting work on Sunday. A branch of the legislature is no more authorized to ignore the laws of the State than an individual, and unlawful agreements of employment with its agents cannot be made by it.

This court has frequently declared the policy of the State relative to the observance of Sunday laws. It recently held, in an opinion written by Mr. Justice CARPENTER:

"The Sunday law in question in this case is one not merely directed against the making of contracts as such. It prohibits and makes illegal the doing of all work except works of necessity and charity, and it makes the doing of such prohibited work punishable by a fine," etc. *International Textbook Co.* v. *Ohl*, 150 Mich. 131 (111 N. W. 768, 13 L. R. A. [N. S.] 1157, 121 Am. St. Rep. 612).

The foregoing recognition by the legislature, the Sun-

day statute, and the decisions of the court relative to the Sunday laws are invoked as bearing against the conclusiveness of former action of the branches of the legislature upon the matter of *per diem* compensation urged as a controlling construction in favor of relator. The conclusion cannot be avoided that the action of the branches of the legislature was not a binding construction of the Constitution and this statute. The repeated violation of a constitutional or statutory provision cannot amount to, or become, legislative construction by labeling it such. It remains a repeated violation of law and nothing more.

Such, in effect, has been held by this court in a case where a portion of the compensation clause of this statute was before it for construction. A mandamus was asked to compel the auditor general to countersign a certificate issued by the speaker and clerk for mileage claimed to be due relator, a journal clerk of the house of representatives, during the regular session of 1901. *Cook* v. *Auditor General*, 129 Mich. 48 (87 N. W. 1037). An examination of the original record and briefs in the case discloses that relator principally relied upon the legislative construction of the statute by long continued practice. In his brief he says:

"A careful examination of the senate and house journals shows that both houses have, each for itself, continuously and without challenge, ever since the adoption of the present Constitution, exercised the right of determining the mileage of their members, officers, and employés."

In support of this contention numerous pages are cited from these journals. Again—

" We submit that the practical construction of the statute of 1873 always has been that each house possesses the power to fix the mileage of its own members, officers, and employés, and that it is too late to question that practice now."

This is familiar language. By substituting *per diem* for "mileage" we have a perfect reproduction of relator's argument in the instant case.

In *Cook* v. *Auditor General, supra,* Chief Justice MONTGOMERY, speaking for the court, said:

"It is the contention of the relator that he (referring to the auditor general) has no discretionary power in the matter; that the house of representatives itself determines the amount of the mileage due to each member. And this is based upon long-continued practice, upon the claim of necessity, and upon the claim that each house exercises certain judicial powers, such as are necessary to determine questions arising in matters peculiar to itself. * * * But whatever may be said of the force of practice in the absence of any statutory provision, it is clear that the legislature, acting through both branches, and by law approved by the governor, has the undoubted power to limit the exercise of such practice, and to prescribe what the compensation to employés shall be, and the manner in which it shall be determined. * * * The duty of certifying this *per diem* and mileage presupposes the ability to determine, and imposes the duty upon the officers whose duty it is to so certify and countersign the certificate of determining, the amount due; and it is significant that the statute provides that the amount so certified shall be such sums as may be due 'under the provisions of this act,' which is the statute fixing the compensation. * * * So, in the present case, the duty of certifying implies a duty of certifying the truth. This necessitates an ascertainment of the truth, and, by the language of the statute, it imposes upon the officers whose duty it is to certify and countersign the duty of ascertaining how much is due by the terms of the act. In holding thus we in no way infringe upon the prerogative of a co-ordinate branch of the government. We but affirm the law which the legislature has itself enacted. * * *

"It is suggested that, if the view above indicated is adopted, money has been drawn illegally from the State treasury in a great many instances, for the reason that the legislature has assumed to pass a resolution fixing the mileage of its members at the close of the session. But we assume that in the cases referred to there has been also the certificate of the proper officers, countersigned by the auditor general; and, if this be so, it can hardly be said that the funds were illegally withdrawn from the State treasury. However this may be, and giving due regard to the force of long-continued practice, we are not able to discover in the statute in question any ambiguity."

I think the case is decisive of the construction involved in this case under consideration. The court in its construction of this statute refused to recognize the claimed legislative construction, because it was not able to discover in the statute in question any ambiguity. It is the principle of construction insisted upon early in this opinion. This court cannot hold differently in the case at bar without overruling *Cook* v. *Auditor General, supra.* The cases are not distinguishable. The fact that in that case the court was considering "mileage," and in this case the *per diem* of legislative employés, does not make a distinction in the principle involved in the two cases. The construction of this statute by this court in *Cook* v. *Auditor General*, was accepted by the legislature. Since it was decided, no attempt has been made by that body to alter, amend, or repeal the section under consideration. Such construction must therefore be considered as final and binding until that case is overruled.

Should there remain any doubt of the correctness of the conclusions arrived at in this opinion, attention is called to a further reason why the relator is not entitled to the relief asked. The Constitution of 1909 does not contain the provision relative to compensation of members of the State legislature upon which the claimed construction must stand. The constitutional provision now is as follows:

"The compensation of the members of the legislature shall be eight hundred dollars for the regular session. When convened in extra session their compensation shall be five dollars per day for the first twenty days and nothing thereafter." (Const. 1909, Art. 5, § 9.)

By implication this section of the statute of 1873 under consideration, in so far as it relates to the compensation of members of the legislature, is repealed, and is no longer of any force or effect. The new Constitution does not contain the provision limiting the right to introduce bills after the expiration of the first 50 days of a session.

No attempt has been made on the part of the legisla-

ture to amend this statute. All legislative enactments which are not in harmony with the new Constitution cannot survive, and are not entitled to any consideration. All which do remain and have force and effect under this Constitution must be construed in harmony with its letter and spirit, and any construction heretofore given, founded upon any statute which is not in harmony with the letter and spirit of the present Constitution, is of no force or effect. It cannot be recognized by this court, for the reason that all decisions of this court must be in harmony with the present Constitution. The construction contended for is purely mechanical and must be so accepted. It is contrary to my sense of justice. Like the idol of the prophet's vision, it has the semblance of strength, but its feet are made of clay.

The conclusion is that the relator is not entitled to the relief prayed. The writ should therefore be denied.