# Order

Michigan Supreme Court
Lansing, Michigan

July 21, 2005

126254

Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Justices

MICHIGAN DEPARTMENT OF CIVIL
RIGHTS ex rel BURNETTE BURNSIDE,
Claimant-Appellee,

v

FASHION BUG OF DETROIT,
Respondent-Appellant.

SC: 126254
COA: 240325
Wayne CC: 01-116726-AA
MCRC: 122300-EM06

_____/

On April 14, 2005, the Court heard oral argument on respondent-appellant's application for leave to appeal the February 19, 2004 judgment of the Court of Appeals. The application is again considered and, pursuant to MCR 7.302(G)(1), in lieu of granting leave to appeal, we REVERSE the judgment of the Court of Appeals and REMAND this case to the Wayne Circuit Court for entry of judgment in favor of Fashion Bug of Detroit. Claimant Burnside did not establish a prima facie case of unlawful discrimination because she failed to demonstrate that she was treated differently than a similarly situated, comparable employee. Claimant Burnside was not similarly situated to Theresa Jawoszek because Jawoszek was a store manager accused of acting discourteously to a customer, while Burnside was an hourly employee accused of acting dishonestly for personal gain. Thus, the relevant aspects of Burnside's employment situation were not "nearly identical" to those of Jawoszek's employment situation. *Town v Michigan Bell Telephone Co*, 455 Mich 688, 699-700 (1997). In addition, it was not established that the ultimate decision maker harbored any racial animus toward Burnside.

TAYLOR, C.J., concurs and states as follows:

I concur in the peremptory order to reverse the judgment of the Court of Appeals and remand this case to the trial court for entry of judgment in defendant's favor. I write separately to respond to the dissents.

Claimant Burnside was a sales associate at one of defendant Fashion Bug's stores in Detroit. On Saturday, September 29, 1991, Burnside was shopping at one of Fashion Bug's other stores in Warren with her twin sister, Benita Withers, and other family members. Burnside attempted to exchange some clothes, and return some others, that she had purchased at the Detroit store with her employee discount. Because they can

purchase clothing with the discount, Fashion Bug policy requires employees to produce a receipt when returning or exchanging items. Theresa Jawoszek, the manager of the Warren store, allowed Burnside to either exchange or return some items that Burnside had a receipt for. According to Jawoszek, Burnside also attempted to return other clothes that she did not have a receipt for, but Jawoszek refused to accept them. Burnside denies that she tried to return items that she did not have a receipt for.

During this episode, Burnside also purchased a skirt that was on sale. When Jawoszek started to place the skirt in the bag with Burnside's other clothes, Burnside asked Jawoszek to put the skirt on a hanger. Jawoszek refused to do so, stating that it was not the Warren store's policy to put sale items on hangers. Burnside protested that Fashion Bug's policy was to put any item on a hanger if the customer requested it. According to Burnside and Withers, Jawoszek responded by saying, "Do you all hang your clothes on hangers?" or, "You people hang your clothes on hangers?" Burnside initially thought that Jawoszek was referring to the people who worked at Burnside's store. Withers, however, who was nearby but had not heard any of the conversation until this point, heard the "you all" or "you people" statement and thought that it might have been a racially motivated generalization. She approached the counter and asked Jawoszek to explain what she meant by the comment. According to Withers, Jawoszek responded by making a pointing gesture toward Burnside and her family members and saying, "You all are the people." Withers then asked, "Well, who are you?" Jawoszek gestured with her hand around the room and then toward herself and the other two employees behind the counter, all of whom were white, and said, "We all are individuals." Jawoszek testified that she uses the phrase "you people" often when referring to both black and white employees, but did not remember making either the specific comment or hand gestures that Burnside and Withers alleged. Lorna Stout, another employee working in the store that day who witnessed the incident, also testified that she has often heard Jawoszek use the phrase "you people" when referring to both black and white employees, but that she did not recall Jawoszek making the specific comment or hand gestures alleged by Burnside and Withers. A verbal confrontation ensued, but Jawoszek eventually gave Burnside a hanger for the skirt, and Burnside and her family members left.

The following Monday, Jawoszek informed her district supervisor that Burnside had attempted to return merchandise without a receipt in violation of Fashion Bug's policy. At the district supervisor's request, Jawoszek prepared a written statement and sent it to Fashion Bug's regional supervisor, Deborah Kerins. After receiving Jawoszek's written statement, Kerins had the district supervisor conduct an investigation. The district supervisor obtained written statements from the other Fashion Bug employees who were working in the store at the time of the incident. She did not obtain one from Burnside. After reading the written statements and consulting Fashion Bug's human resources department in Philadelphia, Kerins decided to fire Burnside, and did so on October 18, 1991.

Meanwhile, about a week after the September 29, 1991, incident, Withers returned to the Warren store and tried to exchange merchandise without a receipt. Jawoszek refused to exchange the clothes, even though Withers was not an employee and, thus, not subject to Fashion Bug's employee-return policy. According to Jawoszek, she refused to give Withers a refund for the merchandise because she thought that Withers was trying to return the same items that Burnside had tried to return on the previous occasion. Thus, she thought that Withers was trying to return items that Burnside had bought with her employee discount. On the basis of this incident, Withers lodged a complaint with Fashion Bug's offices in Chicago alleging that Jawoszek had refused to exchange the items for her because of Withers's race.[1] The complaint was apparently referred to a district supervisor in Michigan, who spoke with Jawoszek and asked her to file a written response. Jawoszek was not disciplined, and neither the district supervisor nor Fashion Bug appears to have done anything further regarding Withers's complaint.

Burnside filed a complaint with the Michigan Civil Rights Commission, asserting that her termination was racially motivated, in violation of MCL 37.2201(2)(a)[2] of the Michigan Civil Rights Act. The complaint was referred to a hearing officer who, after

---

[1] In his dissent, Justice Cavanagh states that he finds it "gratifying" and "telling" that I have prepared such a lengthy response to the dissents from the peremptory order. Be that as it may, I thought that this case required careful factual analysis. In fact, the absence of this tainted the earlier handlings, where there were misstatements of fact and misinterpretations of the record that are in some cases again repeated by the dissents. As an example, Justice Cavanagh, to lay the foundation for a claim that Jawoszek reported Burnside's violation of the return policy as retribution for Withers's having lodged her complaint against Jawoszek, states in his dissent that Jawoszek informed her superior of Burnside's violation *after* learning that Withers had lodged a complaint against her. *Post* at 11. But this simply is not the case. What actually happened is that Jawoszek reported Burnside's violation *before* the events that gave rise to Withers's lodging her complaint. There are other examples of this phenomenon *infra*. I am left puzzled as to why this avoidable misreading of the transcript has taken place.

[2] MCL 37.2202(1)(a) provides:

> An employer shall not . . . [f]ail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.

taking testimony and reviewing the evidence, filed a report recommending that the commission determine that Burnside had not established a prima facie case of discrimination. The commission did not adopt the hearing officer's recommendation, instead holding that Burnside had established a prima facie case of discrimination and awarding her damages. Fashion Bug appealed to the circuit court, which, after a review de novo of the evidence and testimony presented to the hearing officer,[3] affirmed the commission's holding.[4] Fashion Bug then appealed to the Court of Appeals, which determined that the circuit court had not clearly erred[5] in determining that Burnside had established a prima facie case of discrimination and, therefore, affirmed.[6]

I believe that the circuit court clearly erred in determining that Burnside established a prima facie case of discrimination. As was the case with the decisions of the lower courts, the primary fallacy of the dissents in this case is that they disregard the

---

[3] Const 1963, art 5, § 29; MCL 37.2606(1); *Walker v Wolverine Fabricating & Mfg Co, Inc,* 425 Mich 586 (1986). I find questionable this Court's holding in *Walker* that the circuit court's review is limited to the record introduced before the commission given that Const 1963, art 5, § 29 states that appeals from the commission "shall be *tried* de novo before the circuit court . . . ." (Emphasis added.) It seems to me that by ratifying the phrase "tried de novo," instead of "reviewed de novo" or some other phrase, the ratifiers did not intend for the circuit court to merely review the evidence presented to the hearing officer, but, instead, to conduct a completely new trial where it would have the opportunity to hear testimony and assess credibility first-hand. Nevertheless, because the parties in this case did not challenge our decision in *Walker* by seeking to introduce new evidence in the circuit court, this case is not the appropriate vehicle for this Court to reevaluate its decision in *Walker.*

[4] However, the circuit court modified the commission's determination of damages.

[5] *Dep't of Civil Rights ex rel Johnson v Silver Dollar Cafe,* 441 Mich 110, 116-117 (1992). Again, I am concerned with this Court's previous determinations of the standards of review to be applied on appeal. Namely, I find unsettling this Court's blanket conclusion in *Silver Dollar* that a circuit court's determination whether unlawful discrimination occurred is reviewed for clear error. While the circuit court's determinations of fact are surely subject to review under the clearly erroneous standard, MCR 2.613(C), I do not believe that that is the rule for the review concerning whether a prima facie case has been presented. It seems unmistakable that this is a legal issue, which, as such, should be subject to a review de novo. Perhaps this is what the *Silver Dollar* court meant to say but did not clearly state.

[6] Unpublished opinion per curiam, issued February 19, 2004 (Docket No. 240325).

fact that Burnside failed to present any evidence to support a finding that the person who was responsible for her termination, Kerins, harbored any racial animus. Indeed, Burnside herself testified that Kerins never made any comments toward her that she viewed as racially motivated. Rather, the only alleged discriminatory comments that Burnside identified in her testimony came not from Kerins, but from Jawoszek. However, these comments are not sufficient to establish a prima facie case of racial discrimination against Kerins or Fashion Bug.[7]

Although this Court has never addressed the criteria by which alleged discriminatory remarks by one other than the decision maker, or so-called "stray remarks," can be imputed to the decision maker, our Court of Appeals has adopted a four-part test that looks to (1) whether the alleged discriminatory remarks were made by the person who made the adverse employment decision or by an agent of the employer that was uninvolved in the challenged decision, (2) whether the alleged discriminatory remarks were isolated or part of a pattern of biased comments, (3) whether the alleged discriminatory remarks were made in close temporal proximity to the challenged employment decision, and (4) whether the alleged discriminatory remarks were ambiguous or clearly reflective of discriminatory bias. *Krohn v Sedgwick James of Michigan, Inc,* 244 Mich App 289, 292 (2001).

In the present case, the only one of these factors that even arguably weighs in Burnside's favor is the third, as it is undisputed that Kerins's decision to fire her was made not long after the incident in which Jawoszek made the challenged comments. The rest of the factors, however, do not support Burnside's claim. With regard to the first factor, there is no dispute that the alleged discriminatory remark was not made by the decision maker, Kerins, but by Jawoszek, who was not Burnside's supervisor and who was not involved in Kerins's decision to fire Burnside. Rather, Jawoszek's undisputed testimony was that, although she informed Kerins that Burnside had attempted to return merchandise without a receipt, she did not make any recommendation to Kerins as to how, or if, Burnside should be disciplined for her actions. Moreover, Kerins testified that her decision to terminate Burnside was based solely on her consultation with her contact in Fashion Bug's human resources department in Philadelphia. Further, with regard to the second factor, Burnside has not claimed that the alleged discriminatory comments by Jawoszek were part of a pattern of biased comments rather than an isolated incident. Finally, with regard to the fourth factor, the challenged comments by Jawoszek were not

---

[7] In his dissent, Justice Cavanagh accuses me of failing to consider the context in which the "you people" comment was made in this case. *Post* at 10. I am joined by many, then, because the hearing officer, the commission, the circuit court, and the Court of Appeals did not find the "you people" comment to be direct evidence of discrimination. This suggests, to me at least, that it is he who misunderstands the context.

clearly reflective of a discriminatory animus by Jawoszek, but were merely ambiguous. Burnside's own testimony reflects this, as she stated that she thought that Jawoszek was referring to the employees who worked at Burnside's store rather than making a discriminatory comment.[8] Moreover, both Jawoszek and Lorna Stout testified that Jawoszek often uses the phrase "you people" when referring to both white and black employees.

Additionally, even if one were to accept Burnside's and Withers's testimony that Jawoszek made the "you people" comment and made the hand gestures, and assume that the comment was discriminatory, Burnside failed to present any evidence that Kerins knew about the comments before she fired Burnside. Indeed, while the dissents join the lower courts in relying on the fact that Kerins never interviewed Burnside before she fired her to infer that Kerins's decision was racially motivated, that very fact prevents Jawoszek's comments and alleged hand gestures from being imputed to Kerins.

Unsatisfied by this lack of direct evidence of a discriminatory animus behind Kerins's decision to fire Burnside, the dissents, as did the lower courts, claim there is circumstantial evidence that Burnside's termination was racially motivated by engaging in a flawed disparate treatment analysis.

To establish a prima facie case of racial discrimination based on a "disparate treatment" theory, a plaintiff must prove that she was a member of a class protected by the act and that she was treated differently than a member of a different class for the same or similar conduct. *Lytle v Malady (On Rehearing)*, 458 Mich 153, 181 (1998) (opinion of Weaver, J.); *Betty v Brooks & Perkins,* 446 Mich 270, 281 (1994); see also *Merillat v Michigan State Univ,* 207 Mich App 241, 247 (1994). The first element is met because

---

[8] In particular, Burnside testified as follows:

> Counsel: Okay. And after you informed Ms. Jawoszek that you wanted a hanger and she told you that it was against policy, what if anything happened after that?

> Burnside: Well, then she says, "Do you all hang your clothes on hangers?"

> Counsel: And what did you say?

> Burnside: I told her that it shouldn't matter, you know, if we hang our clothes on hangers. And I was hoping that she was referring to my store, because I said we always—whatever a customer wish[es], that's what we do.

Burnside, as an African-American, is a member of a protected class. Nonetheless, Burnside has failed to establish the second element because she did not introduce any evidence that Kerins treated her differently than a member of a different race for the same conduct: violating Fashion Bug's policy against employees returning merchandise without a receipt. Indeed, Burnside did not introduce any evidence whatsoever concerning how other employees were disciplined for violating the employee return policy and, in fact, could not identify any other instance in which another employee had been accused of violating the return policy. See *Merillat, supra* at 248.

Burnside, however, attempts to rest her claim of disparate treatment on her assertion that she was treated differently from Jawoszek because Fashion Bug chose not to investigate Withers's complaint against Jawoszek as aggressively as it did Jawoszek's allegation that Burnside attempted to return merchandise without a receipt and, more specifically, did not ultimately fire Jawoszek. The primary flaw in this argument, however, and one that the dissents and the lower courts failed to realize, is that Burnside was fired by Kerins, who testified that she did not investigate Withers's complaint against Jawoszek. In fact, she testified that she was not even aware that Withers had filed a complaint against Jawoszek with Fashion Bug's offices in Chicago.

Moreover, even disregarding this crucial fact, Burnside's assertion that she was treated differently than Jawoszek is not sufficient to create a prima facie case of discrimination because, "[t]o create an inference of disparate treatment, [Burnside] must prove that [she and Jawoszek] were similarly situated, i.e., 'all of the relevant aspects' of [her] employment situation were 'nearly identical' to those of [Jawoszek's] employment situation." *Town v Michigan Bell Tel Co,* 455 Mich 688, 699-700 (1997) (opinion by Brickley, J.), citing *Pierce v Commonwealth Life Ins Co,* 40 F3d 796, 802 (CA 6, 1994); see also *Smith v Stratus Computer, Inc,* 40 F3d 11, 17 (CA 1, 1994); *Mitchell v Toledo Hosp,* 964 F2d 577, 583 (CA 6, 1992).

The relevant aspects of Burnside's employment were not sufficiently identical to Jawoszek's. First, as pointed out by our peremptory order, the most relevant aspect in this case is the wrongs for which Burnside and Jawoszek were accused. Burnside was accused of violating a Fashion Bug policy aimed at preventing theft by employees. Not only did Burnside admit during her testimony that she was aware of this policy, but her former store manager, Sharon Mitchell-Harvey, testified that she had previously given Burnside several oral and written warnings about attempting to return merchandise without a receipt. Jawoszek, on the other hand, was merely accused of declining to refund money to a nonemployee, Withers, for merchandise for which Withers did not have a receipt. In fact, Withers testified that Jawoszek did not tell her that she could not return the merchandise at all, but, instead, merely told her that she could only return the merchandise at the Fashion Bug outlet from which she had purchased it. This, according to Jawoszek, was because she suspected that Withers was attempting to return the same items that Burnside had attempted to return on the previous occasion. Accordingly,

Jawoszek recommended that Withers take the merchandise back to the store from which she had purchased it because that store would have a backup receipt. That way, Jawoszek could ensure that Withers was not returning clothing that Burnside had purchased with her employee discount. Quite simply, evidence about how Fashion Bug treated Jawoszek for refusing to issue a refund to a customer who could not produce a receipt (merchandise that could have been purchased by an employee at a discount) is irrelevant to how it treated an employee who was accused of trying to defraud the company and, indeed, had been warned about such conduct in the past.

Second, as is also pointed out by our peremptory order, another relevant aspect in this case is the disparity between Burnside's and Jawoszek's positions at Fashion Bug, as well as the disparity between the persons by whom they were accused of wrongful conduct. Specifically, Jawoszek was a store manager accused by a customer of poor service because the customer was upset that Jawoszek had asked her to return merchandise at the store from which she had bought it, an action aimed at avoiding a potential monetary loss to the company. Burnside, in contrast, was accused by a store manager of trying to defraud the company. Why the dissents and the lower courts believe that something dark and suspicious is shown by Fashion Bug's decision to fire an employee accused by a manager of attempting to defraud the company, an accusation that was supported by the testimony of another employee working in the store at the time,[9] and coincidentally not to conduct an equally searching investigation of a customer's

---

[9] As did the lower courts, the dissents attempt to create an inference of discriminatory animus on Kerins's behalf by asserting that her investigation into Jawoszek's accusation was flawed because she only interviewed the white persons who were in the store at the time that Burnside attempted to return merchandise without a receipt. This assertion by the dissents however, is based on an erroneous reading of the record. In particular, Withers testified that, aside from Jawoszek and the two other white employees who were in the store at the time, there were approximately four or five white customers standing at the checkout counter at the time of the incident. It is not disputed, however, that these other white customers were not interviewed. Instead, only the other employees who were working at the time of the incident were interviewed. Thus, contrary to the dissents' conclusions, the most reasonable inference from the testimony presented at the hearings was not that the investigation focused only on interviewing the white persons who were present during the incident, but on interviewing the other Fashion Bug employees who were working at the time of the incident. Why the dissents and the lower courts find it so odd that Fashion Bug, which was conducting an internal investigation concerning alleged employee misconduct, would focus its investigation on interviewing identifiable Fashion Bug employees who were working at the time of the incident and to whom it had access, and did not attempt to seek out unidentified nonemployees to whom it did not have access, is curious. I find it quite unremarkable.

complaint about poor customer service is beyond my understanding. Rather, in my view, Fashion Bug's decisions to fire an employee accused by a manager of theft and to run the risk of losing a customer by not aggressively investigating the customer's complaint reflect a prioritization that does not implicate racial discrimination, but business judgment. As such it should not be second-guessed by the courts. See, *Hazle v Ford Motor Co,* 464 Mich 456, 475-476 (2001).

Finally, even if the dissents were correct in asserting that Burnside presented a prima facie case of discrimination based on a theory of disparate treatment, this conclusion would not support a finding that Fashion Bug wrongfully terminated Burnside's employment. Rather, Burnside's having met her burden of establishing a prima facie case would merely create a rebuttable presumption of discrimination. This presumption, however, is not conclusive of unlawful discrimination and dissipates if Fashion Bug articulated a legitimate, nondiscriminatory reason for firing Burnside. *Hazle, supra* at 462-465; *Lytle, supra* at 172-173. In this case, Fashion Bug articulated such a reason by introducing evidence that Kerins's decision to fire Burnside was motivated by Jawoszek's allegation that Burnside had attempted to violate its policy against employees returning merchandise without a receipt or, in other words, Kerins's belief that Burnside had attempted to defraud the company. Thus, any presumption of unlawful discrimination was rebutted, and the burden then shifted back to Burnside to show by a preponderance of the evidence that Fashion Bug's stated reason for her termination was not the true reason, but was merely a pretext for discrimination. *Hazle, supra* at 465-467; *Lytle, supra* at 175-176; *Town, supra* at 695-698. Rebuttal information of this sort was never presented by Burnside.

Rather, to establish pretext, the lower courts followed the commission's conclusion that Burnside had not, in fact, attempted to return merchandise without a receipt. Even assuming this conclusion to be correct, it does not satisfy Burnside's burden. Specifically, it is not sufficient that Burnside merely disprove Fashion Bug's proffered nondiscriminatory reason for her termination. Rather, such disproof must not only evince mere falsity, but must also evince a discriminatory motive. *Lytle, supra* at 182; *Town, supra* at 706. Stated simply, even if one were to assume, *arguendo,* that Jawoszek falsely accused Burnside of attempting to return merchandise without a receipt, this does not inevitably lead to the conclusion that Kerins harbored any discriminatory motive in deciding to fire Burnside on the basis of the accusation. See *Hazle, supra* at 474-475. Rather, all that this would show is that Kerins's decision to fire Burnside was based on inaccurate information, and it is not within the province of the courts to second-guess whether Kerins's decision was "'wise, shrewd, prudent, or competent.'" *Hazle, supra* at 464 n 7, quoting *Town, supra* at 704. Instead, they must focus only on whether Kerins's decision was "'lawful', that is, one that is not motivated by a 'discriminatory animus.'" *Id.,* quoting *Texas Dep't of Community Affairs v Burdine,* 450 US 248, 257 (1981). In the present case, there can be no dispute that Kerins's decision to fire an employee accused by a manager of attempting to defraud the company was a lawful

decision. Moreover, as outlined above, Burnside did not offer any direct evidence that Kerins's decision was motivated by a discriminatory animus, and failed to present sufficient circumstantial evidence of a discriminatory animus on Kerins's part to establish a prima facie case.

Accordingly, I believe that the circuit court's determination that Burnside established a prima facie case of discrimination was clearly erroneous. I therefore concur in the peremptory order to reverse the Court of Appeals and remand this case to the circuit court for entry of judgment in defendant's favor.

CAVANAGH, J., dissents and states as follows:

Claimant Burnette Burnside established a prima facie case of unlawful discrimination based on race because she was treated differently than another employee, Theresa Jawoszek. In all relevant aspects, Burnside and Jawoszek were similarly situated. Burnside's and Jawoszek's circumstances were nearly identical because they were two of defendant's employees accused of misconduct that necessitated defendant to conduct investigations to determine the validity of the allegations. Any differences in job classification were irrelevant to explain the widely disparate manner in which defendant conducted its subsequent investigations.

Jawoszek was accused not merely of acting discourteously to a customer, but of acting discourteously to a customer *on the basis of race*. This is arguably as serious, if not more serious, than the highly questionable allegation by Jawoszek that Burnside attempted to exchange clothing items without a receipt.

Notably, Jawoszek's allegation against Burnside came after Jawoszek allegedly made a racist remark to Burnside. After Burnside requested a hanger for a skirt she was purchasing, Jawoszek allegedly said, "You people hang your clothes on hangers?" When asked to explain this comment, Jawoszek allegedly referenced Burnside and Burnside's family members and said, "You all are the people." She then motioned to herself and other white employees and said, "We all are individuals." While Chief Justice Taylor argues that Jawoszek's alleged comment was not a racist one because she had used the phrase "you people" in the past to refer to African-American and Caucasian employees, he fails to consider the context of the statement made in this case.[10]

---

[10] I find it somewhat gratifying, and telling, that in response to the dissents, the Chief Justice deems a twenty-page concurrence necessary to explain the majority's five-sentence order reversing the Michigan Civil Rights Commission, the circuit court, and the Court of Appeals.

Even assuming that Jawoszek had previously used the phrase "you people" to refer to African-American and Caucasian employees, in this context Jawoszek's comment could only reasonably be viewed to be racially biased. It is implausible that Jawoszek, a retail manager at a clothing store, suddenly was experiencing newfound wonder at whether customers hang their clothes on hangers. And the fact that she just happened to be referring only to African-American customers when she wondered aloud about this newfound concern is equally implausible. While a hearing officer is generally in the best position to judge the credibility of witnesses, it does not mean that the Michigan Civil Rights Commission, the circuit court, the Court of Appeals, and this Court must unquestionably accept the hearing officer's determination of a witness' version of events. Considering that the Michigan Civil Rights Commission, the circuit court, and the Court of Appeals have all been in agreement that Burnside established a prima facie case of unlawful discrimination based on race, I do not agree with this Court's decision to substitute its judgment for that of the lower courts.

Further, Chief Justice Taylor states that Burnside presented no evidence that Deborah Kerins, the person who was ultimately responsible for Burnside's firing, harbored any racial animus. However, what Chief Justice Taylor ignores is that Jawoszek set the termination process in motion by alleging that Burnside tried to improperly exchange merchandise. It is misleading to claim, as Chief Justice Taylor does, that Jawoszek was not involved in the decision to fire Burnside. Jawoszek is the one who alleged that Burnside was attempting to violate defendant's policies. Jawoszek's allegation began the process that ended with Burnside being fired. If Jawoszek had a racial bias, as her "you people" comment appears to indicate, then her racial bias is absolutely relevant to the validity and reliability of her allegation against Burnside.

After considering the allegations against Burnside and Jawoszek, the glaring disparity in how defendant treated each employee becomes apparent when one examines how defendant conducted its investigations. Jawoszek, a Caucasian employee, was accused of making a racially disparaging comment to Burnside and treating Benita Withers, Burnside's sister, discourteously and discriminatorily because of her race. In response, after learning that Withers had filed a complaint, Jawoszek alleged to Kerins that Burnside attempted to exchange clothing items without a receipt. In investigating these allegations, defendant interviewed only Jawoszek and Caucasian employees. Defendant did not interview Burnside, Withers, or an African-American employee who was present when Burnside allegedly was trying to improperly exchange clothing items and when Jawoszek allegedly made the "you people" comment. Remarkably, after interviewing only Caucasian employees, defendant decided not to discipline Jawoszek and to fire Burnside. Jawoszek's complaint—which led to Burnside's being fired—was categorically accepted by defendant, even though Jawoszek had been accused of racist behavior.

There is no rational reason for the disparity in how defendant conducted its investigations. A savvy employer can always argue that there is a difference in job classification or conduct, but any difference in job classification or alleged misconduct is irrelevant in this case to explaining why defendant engaged in such widely differing standards in investigating alleged wrongdoings. Chief Justice Taylor states that defendant's actions do not implicate racial discrimination, but merely business judgment. But the fact that the termination process was set in motion by a manager who allegedly made racist remarks casts the entire process in tremendous doubt. Firing an employee under these circumstances should not be classified as yet another mere "business decision." Defendant should not be able to insulate itself from liability because of inconsequential differences that do not affect the fundamental issue that, when faced with allegations of misconduct, defendant treated an African-American employee and a Caucasian employee differently for no discernable reason. Accordingly, I would deny leave to appeal.

WEAVER, J., dissents and states as follows:

I dissent from the order peremptorily reversing the Court of Appeals decision in this case because I believe the Court of Appeals decision is correct. In affirming the conclusion that Ms. Burnside, an African-American employee, was treated differently for the same or similar conduct than Ms. Jawoszek, a Caucasian employee, the Court of Appeals stated:

> Here, the trial court concluded that claimant and Jawoszek were similarly situated, both subject to the return/exchange policy. The fact they were treated differently for allegedly violating the policy was sufficient to give rise to a prima facie case. The trial court noted that there appeared to be only one policy related to investigation of allegations of violating store policy, regardless of whether the allegations involved managers or nonmanagerial employees, and that in that respect, claimant and Jawoszek were considered comparables. Accordingly, the "relevant aspect" of claimant's and Jawoszek's employment situation—that they both are subject to the same store policies regarding investigations and discipline— is the same. We cannot conclude that the trial court's decision in this regard was clearly erroneous. *Silver Dollar Café, supra*.[11]

---

[11] *Dep't of Civil Rights ex rel Johnson v Silver Dollar Cafe (On Remand)*, 198 Mich App 547; 499 NW2d 409 (1993).

Under the burden shifting framework of *McDonnell Douglas*,[12] the establishment of a prima facie case creates the presumption of discrimination, requiring the defendant to articulate "'legitimate non-discriminatory reason'" for the plaintiff's termination. *Lytle v Malady (On Rehearing)*, 458 Mich 153, 173; 579 NW2d 906 (1998). The purpose of this explanation serves to overcome the presumption of discrimination, shifting the burden back to the plaintiff to demonstrate that the proffered explanation was merely pretextual. *Id.* at 173-174. Here, respondent offered that claimant was terminated because she violated the store's policy by attempting to exchange clothing without a receipt.

The commission concluded that this explanation was pretextual because, as it found, claimant had not, in fact, violated store policy inasmuch as she actually had a receipt for the clothes she sought to return and exchange. The trial court agreed with the commission that claimant's "prima facie case strongly indicates race played a part in the decision to terminate plaintiff. As noted above, Fashion Bug, through Kerins, employed racially discriminatory methods of investigation which led it to terminate [claimant]." Moreover, the trial court agreed with the commission that plaintiff never actually violated the policy because she never exchanged merchandise without a receipt. Finally, the trial court reasoned that the use of the "you people" language[13] by Jawoszek could be construed as racially derogatory. The trial court reasoned that use of this language by Jawoszek could explain why Jawoszek complained about claimant, which initiated the investigation process, which ultimately led to claimant's termination.

Respondent first argues that the conclusion of the commission and the trial court that claimant did not violate respondent's policy was not supported by the evidence. As previously stated, our review of this issue is not de novo. *Silver Dollar Café, supra*. The commission as the reviewing body was entitled to make a de novo decision on all questions of fact and law, see *Ferrario v Escanaba Bd of Ed*, 426 Mich 353, 366-367; 395 NW2d 195 (1986), and the trial court's review of that decision is de novo.

---

[12] *McDonnell Douglas Corp v Green*, 411 US 792 (1973).

[13] The Court of Appeals is referring to a statement made by Ms. Jawoszek, manager of defendant's Warren store, when Ms. Burnside, an employee of defendant's Detroit store, and her sister, Benita Withers, were shopping at the Warren store. When Ms. Burnside requested that Ms. Jawoszek leave the skirt that Ms. Burnside was purchasing on the hanger, Ms. Jawoszek replied, "You people hang your clothes on hangers?"

*Silver Dollar Café, supra.* Respondent points out that, while claimant did not successfully return items without a receipt, there is no dispute that claimant attempted to do so. The commission and trial court were able to determine that claimant went to respondent's store to exchange her blouse and blazer. Claimant found the blouse that she wanted, but could not find the blazer in the right size. Therefore, claimant exchanged the blouse, but kept her blazer; claimant had the receipt for the blouse. This evidence supports the conclusion of the trial court and the commission that claimant did not violate the policy. Actually, what is unsupported by the evidence is respondent's assertion that claimant attempted to violate respondent's policy. One of the ways a plaintiff may show that a defendant's explanation or the plaintiff's termination is a pretext is by showing that that reason had no basis in fact. *Feick v Monroe County,* 229 Mich App 335, 343; 582 NW2d 207 (1998). Here, by showing that respondent's explanation has no basis in fact supports the conclusion that respondent was racially motivated in terminating claimant.

Respondent next argues that the decision to terminate claimant was made in good faith, and was a matter of business judgment that should not be second-guessed. This argument ignores the conclusion that the investigation and disciplinary methods employed by respondent were racially disparate. Although Kerins may well have believed claimant violated the policy, that fails to explain why the allegations against claimant were investigated only by talking to white employees, and why claimant was terminated, when allegations directed at Jawoszek were not investigated, and Jawoszek was not punished. Respondent's reasoning is flawed, in that all employment decisions can be said to involve "business judgment," but this fact alone does not insulate an employer from liability for using racially based motives for making such decisions.

Respondent also argues that the trial court erred when it relied on Jawoszek's "you people" language as a basis for concluding respondent's reason for terminating claimant was pretextual. Respondent asserts that the language used by Jawoszek was irrelevant because it was Kerins, and not Jawoszek, who ultimately decided to terminate claimant. In looking at the relevancy of comments which may or may not amount to direct evidence of discrimination, this Court looks at whether the "proffered comment was made by an agent of the employer involved in the decision to terminate plaintiff's employment." *Krohn v Sedgwick James of Michigan, Inc,* 244 Mich App 289, 300; 624 NW2d 212 (2001). Jawoszek was an agent of the decisionmaker who decided to terminate plaintiff's employment. Respondent fails to establish how the trial court's consideration of these

comments amount to clear error warranting reversal. *Silver Dollar Café, supra.*

We do not second guess the conclusion of the trial court and commission, as factfinder, that claimant's prima facie case was sufficiently strong to conclude that respondent's decision to terminate claimant was racially motivated. The reasons for finding a prima facie case can also serve to rebut a defendant's proffered nondiscriminatory explanation. *Town v Michigan Bell Telephone Co,* 455 Mich 688, 695; 568 NW2d 64 (1997). Moreover, as further evidence to rebut respondent's explanation, the trial court and the commission concluded that respondent's explanation was untrue. Finally, the trial court considered the comments made by Jawoszek to determine that the explanation was pretextual. The trial court did not err in so concluding. *Silver Dollar Café, supra.* [*Dep't of Civil Rights v Fashion Bug of Detroit,* unpublished opinion per curiam of the Court of Appeals, issued February 19, 2004 (Docket No. 240325).]

I agree with this analysis and therefore would deny leave to appeal.

KELLY, J., dissents and states as follows:

I fully concur in the dissenting statements of Justices Cavanagh and Weaver.

The Michigan Department of Civil Rights determined that respondent discriminated against claimant Burnette Burnside on the basis of her race. The circuit court and the Court of Appeals affirmed. This Court finds that each of these decisions was clearly erroneous. It reverses them and, in so doing, steps out of its proper role and acts as the finder of fact, notwithstanding that it is not the best situated to make factual rulings.

The case arises from complaints lodged against Burnette Burnside, who is African-American, and Theresa Jawoszek, who is Caucasian, for violating their employer's company policy. Both women were Fashion Bug employees. However, the investigations of the complaints against the two employees differed greatly.[14] The trial court found no legitimate material basis for the difference. This Court's peremptory order reversing provides no explanation for its conclusion that the trial court clearly erred in its analysis.

---

[14] This is pointed out by Justice Weaver, quoting the Court of Appeals, and Justice Cavanagh in their dissenting statements.

I disagree, also, with the order's statement that "it was not established that the ultimate decision maker harbored any racial animus toward Burnside." Regional manager Deborah Kerins, who is Caucasian, investigated the complaint against Burnside and discharged her. Kerins interviewed only the Caucasian individuals involved, none of the African-American individuals, including employee Burnside.[15] Contrary to the majority's statement, the evidence sufficiently supports the trial court's conclusion that the ultimate decision maker harbored racial animus toward claimant.

The Court of Appeals, the trial court, and the Department of Civil Rights did not clearly err in finding that Burnside was subjected to racial discrimination by respondent. I would deny leave to appeal and leave the decisions of the earlier tribunals intact.

d0719

---

[15] One would reasonably expect that a company "conducting an internal investigation concerning alleged employee misconduct," *Ante* at 8 n 9, would interview the employee who is the subject of the alleged misconduct.



I, CORBIN R. DAVIS, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

July 21 , 2005

Clerk